# SUPREME COURT.

SAMUEL WEEKS *et al.* agt. JACOB WEEKS CORNWELL *et al.*

*Will—Distribution under, impracticable and uncertain—When subject of trust attempted to be created, too indefinite to be enforced, and trust should be declared void.*

The testator, who left no children, gave certain real and personal estate to his widow (who has since died) in lieu of dower, in which was included an estate for life in four houses in Fifth avenue. With the exception of four specific devises in fee, he devised certain portions of his estate to his executors for the use of various persons designated, during their respective lives, with a remainder in fee as to each portion.

He then gave the residue of his estate, which comprised the Fifth avenue property, to his executors, with power to mortgage it, and, after paying taxes and other expenses, to divide the remainder, at any time within ten years, to the legatees named in his will (except his servants) in like proportions to their previously specified legacies. Eighteen specific devises of a life estate and remainder in fee, in several parcels of land in different localities, constitute the basis of the intended distribution.

*Held*, that though the provision giving the executors the right to mortgage the residuary estate and make distribution of the surplus of proceeds thus realized, within ten years, does not unlawfully suspend the power of alienation; yet, as in order to make division in the proportions named, the value of ninety-seven parcels of land must not only be ascertained, but also the value of the estate of each life tenant, and of the estate in remainder in fee, and also of such as may have died or may thereafter be born, such a distribution as is contemplated would be impracticable and uncertain, and the subject of the trust is too indefinite to be enforced, and the trusts should be declared void.

*Special Term, January,* 1883.

JACOB WEEKS died in the city of New York, September 9, 1881, leaving his widow, but no child nor issue of any child, him surviving.

By his will, dated May 9, 1881, which was duly admitted to probate September 20, 1881, he devised and bequeathed to his widow certain real and personal estate in lieu of dower, in which was included an estate for life in the premises, Nos. 750, 752, 754, 756 Fifth avenue, in the city of New York.

With the exception of four specific devises in fee, the testator specifically devised certain portions of his real estate to his executors upon trust to collect the rents, profits and income thereof during the respective lives of the *cestuis que trust* designated by the will, and after expending therefrom such amounts as would be necessary to keep the premises in good order and repair, and properly insured against loss and damage by fire, to pay the remainder of such rents as and when collected to the persons thus designated during their respective lives, with a remainder in fee as to each portion as by such will was devised.

The testator made the following provision as to his residuary estate:

" 24*th*. All the rest, residue and remainder of my estate, real and personal, that I may own at the time of my death, and not hereinbefore bequeathed in fee or upon trust, I give, devise and bequeath to my said executors upon trust, to use the same as in their judgment they deem to be for the best interest of my whole estate ; and, in order to raise money for that purpose, I empower them to mortgage the piece or parcel of land being the residue and remainder of my estate, and not hereinbefore disposed of in fee or upon trust, and after paying and keeping paid all taxes and assessments upon said property and expending such amounts as they may deem necessary to keep the said premises in good order and repair and properly insured against loss and damage by fire, to divide and pay the remainder at any time within ten years to each and every of my legatees hereinbefore named, except Ann Davey and Hugh Collins, in the proportion in which his, her or their specified legacies, hereinbefore named and bequeathed, bear to each other. The heirs of such legatee as may have died to take the share to which said legatees would, if living, have been entitled.

" 25*th*. Upon the termination of the real estate trusts herein contained, where I have not hereinbefore disposed of the fee of my real estate, I do hereby give, devise and bequeath the fee of said real estate trust property to each and every one of my legatees herein named, · except Ann Davey and Hugh Collins, to be divided among such legatees in the proportion in which his, her or their specified legacies, hereinbefore named and bequeathed, bear to each other. The heirs of such legatee as may have died to take the share to which such legatee would, if living, have been entitled, meaning and intending by this to regard each of my legatees, except Ann Davey and Hugh Collins, a legal heir to my estate, limited to the said trust property in the proportion named.

" 27*th*. I authorize and direct my executors to repair or rebuild the buildings upon any of the lots of ground herein conveyed to them in trust, if said buildings upon shall be partially injured or wholly destroyed by fire during the continuance of such trust, and, in order to raise money for that purpose, I empower them to mortgage the parcel or parcels of land upon which said buildings shall be situated, and I charge the payment of said mortgages upon the said parcels of land respectively.

" 28*th*. I authorize and direct my executors to repair or rebuild the buildings upon any of the lots, or build upon any of the vacant lots herein conveyed to them in trust, upon the request, in writing, of the person or persons, or a majority of them, entitled to take under the provisions of any trust herein, and, in order to raise money for that purpose, I empower them to mortgage the parcel or parcels of land upon which said buildings shall be situated, and I charge the payment of said mortgages upon the said parcels of land respectively.

" 29*th*. I authorize and direct my executors, if I shall die leaving any building or buildings upon any of the lots of ground hereinbefore devised in an unfinished state, or having executed any contract or contracts for the erection of any building thereon, to finish and complete or carry out the same, as the case may be, and for that purpose 1 empower them to mortgage the parcels of land upon which said unfinished buildings may be situated, or to which said contracts may relate, and I charge the payment of said mortgages upon the said parcels of land respectively.

" 30*th*. I authorize and direct my executors that, immediately upon the proving of this, my will, or as soon thereafter as possible, they pay all taxes, assessments, mortgages, or incumbrances whatsoever against my said property, at the time of my death, out of my personal estate. If my personal estate shall be insufficient for the above purpose, I direct that any deficiency which may exist shall be paid out of the

income of my entire estate, except the income from the property devised for life to my wife, Catharine Weeks.

"31*st*. I authorize and direct my executors to pay the annual taxes and all assessments upon the property herein devised to them in trust, out of the income thereof respectively, and I direct my wife to pay the annual taxes and all assessments upon the property devised to her for life.

"32*d*. I nominate and appoint my wife, Catharine Weeks, executrix; my adopted son, Jacob Weeks Cornwell; my nephew, Samuel Weeks, jr., and George Washington Weeks, executors of this my last will and testament, and I hereby give to them, each, or such of them as may serve, the sum of $1,200 annually, in lieu of all other commissions or compensation allowed by law.

"33*d*. I authorize and empower them to hire an office and to appoint an agent, if they should deem it necessary."

Catharine Weeks, the widow of the testator, died April 7, 1882. By her death the life estate in the Fifth avenue property was terminated.

This action was commenced by a brother of the testator and by one of his executors, against the persons alleged to be severally interested, for a construction of the will and for a partition of the testator's residuary estate, as to which it is claimed he died intestate.

*S. H. Thayer*, for plaintiffs.

*E. Ellery Anderson*, for defendant Nathaniel T. Weeks.

*Wm. A. Beach* and *Van Schaick, Gillender & Stoiber*, for defendants Geo. W. Weeks and others.

*Frederick S. Wait*, for defendant Henry A. Weeks.

*Graff & Blauvelt*, for guardian *ad litem*.

*Mathews & Rapallo*, for defendants Hyatts.

*Flamen B. Candler*, for defendants Cornwell and others.

*Abner C. Thomas*, for defendant Beckwith.

*W. B. Putney* for defendants Trask.

LARREMORE, *J.* — The residuary estate referred to in the twenty-fourth subdivision of the will is evidently the Fifth avenue property. All of the testator's real estate except this had been previously devised, and provision made for specific charges upon each portion thereof. We are therefore to consider :

*First.* His intention as to the disposition made of his residuary estate.

*Second.* The validity of such disposition.

It is apparent that during the life of the widow the executors had no present interest therein, but the testator designed that they should use the same in their discretion for the best interest of his whole estate, and for that purpose he gave them a permissive power to mortgage, and to divide the proceeds thus realized (after deduction for taxes, assessments, insurance and repairs), within ten years, to each and every of the legatees named in his will (except his servants), in like proportion to their previously specified legacies.

What he denominates as legacies were in reality devises, in trust and in fee, of a large portion of his real estate, which would necessarily be subject to fluctuations of value during the ten years in which distribution of the surplus realized by mortgaging the residuary estate might be made. Eighteen specific devises of a life estate and remainder in fee in several parcels of land, in different localities, constitute the basis of the intended distribution. Taken as a whole, the will plainly indicates that each portion of the property devised should bear its own burdens, and there is no foundation for the claim that this residuary estate should be used for the payment of specific liens upon the property already devised.

By the twenty-seventh, twenty-eighth and twenty-ninth subdivisions, authority is given to repair, build or rebuild upon the trust property, and to mortgage the specific parcel

or parcels of land upon which said buildings shall be situated, for that purpose.

It was further directed, by the thirtieth and thirty-first sub-divisions, that all taxes, assessments and incumbrances against his property at the time of the testator's death should be paid out of his personal estate, and if that should be insufficient, then such deficiency should be paid out of the income of his entire estate, except that derived from the property devised for life to his wife, who is directed to pay the annual taxes and all assessments thereon, with a further direction to the executors to pay tne annual taxes and all assessments upon the property devised to them in trust out of the income thereof respectively.

There is no proof of the existence of any lien or incumbrance upon the premises devised.

No legacies, as such, are given by the will, nor does it con-fer upon the executors any power of sale or any right to receive the rents and profits of the residuary estate.

As to the twenty-fifth subdivision : The words " upon the termination of the real estate trusts herein contained " are qualified by and must be read in connection with the words immediately following, " where I have not hereinbefore dis-posed of the fee of my real estate."

The testator had already made disposition of the fee of all of his estate, except the Fifth avenue property, and it is a reasonable inference that by the term " real estate trusts " he meant simply the trust in relation to the Fifth avenue prop-erty referred to in the twenty-fourth subdivision. And, al-though he therein directs that such trust property be used for the best interest of the whole estate, this direction must be understood in a qualified sense, for the moneys to be raised by mortgage upon the residuary estate were first to be applied in payment of taxes, assessments, insurance and repairs upon it ; then the remainder or surplus of such moneys was to be divided at any time within ten years among each of the lega-tees in the proportions named.

Briefly stated, the testator says to his executors : I give this property to you. It may happen that the rents and profits thereof will not always be sufficient to pay future taxes, assessments, insurance and repairs thereon, or some other contingency may arise. You may raise money for that purpose by mortgaging the premises at any time within ten years, and if any surplus remains after making such payments, you will divide it among my legatees in the proportion in which their respective legacies (already bequeathed) bear to each other.

This, in substance, appears to have been the testator's intention, and if valid, should be given effect (*Keteltas* agt. *Keteltas*, 72 *N. Y.*, 312 ; *Colton* agt. *Fox*, 67 *id.*, 349).

*2d.* Do subdivisions twenty-four and and twenty-five, above referred to, or either of them, constitute a valid trust ?

The title to the residuary estate vested in the executors, subject to the life estate, and the object of the trust appears to be within the purview of the statute which confers authority " to sell, mortgage or lease lands for the benefit of legatees or for the purpose of satisfying any charge thereon " (3 *R. S.* [*7th ed.*], *p.* 2181, *sec.* 55).

Subdivision twenty-five plainly indicates an intention that the fee of the Fifth avenue property should vest in fee upon the termination of the life estate of the widow, for that trust estate was the only property which had not been previously disposed of in fee. And it is equally clear that each of the legatees named was to be regarded as a legal heir to such estate.

But the subject of the trust is indefinite and cannot be equitably enforced. In order to make division in the " proportions named " the value of ninety-seven parcels of land must not only be ascertained, but also the value of the estate of each life tenant and of the estate in remainder in fee, and also of such as may have died, or may thereafter be born. An examination of the eighteen previous devises of the will clearly show that such a distribution as is contemplated would

be impracticable and uncertain (*Bayeaux* agt. *Bayeaux*, 8 *Paige*, 333; *Story's Eq. Juris.*, sec. 979, 1068*b*, 1073).

No approximation of such values can be reasonably ascertained and the *cy pres* doctrine contended for, if applicable, would be impracticable (*Jackson* agt. *Brown*, 13 *Wend.*, 445; *Story's Eq. Juris.*, sec. 1074*a*, *p.* 345).

The division of the residuary estate is predicated upon the devises previously made, and according to the proportions thereof. Unless the value of such proportions can be reasonably ascertained, the intention of the testator cannot be carried out.

To allow an equal distribution of such residuary estate among the legatees would virtually make a new will and defeat the object of the testator.

The executors by the will took the title, and not a mere power in trust. They have no authority to sell or lease, they can only mortgage, and their right to make distributions of the surplus of proceeds thus realized is to be exercised within ten years. This right does not suspend the power of alienation prohibited by the statute (3 *R. S.* [7*th ed.*], secs. 14, 15, *p.* 2176).

But executors had no power to alien the property; and their right to divide the surplus proceeds realized by mortgaging the same terminated by the falling in of the life estate, when the fee, by the twenty-fifth subdivision, vested in the legatees therein named. Yet, as before observed, the subject of the intended trust, in respect to the division of the fee of the trust property, is indefinite and uncertain, and for that reason the trust should be declared to be void.

The action for partition should be sustained, and if in its progress it shall appear that other persons than those now appearing therein are necessary parties, the court will direct them to be brought in.